UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
LIBERTY MUTUAL INSURANCE
COMPANY,

                Plaintiff,             **MEMORANDUM AND ORDER**
                                       21-CV-5130 (RPK) (RER)

      v.

BILTMORE GENERAL CONTRACTORS,
INC., FRANK GEISER, and MARY GEISER,

                Defendants.
---------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

In this diversity action, plaintiff Liberty Mutual Insurance Company brought suit against defendants Biltmore General Contractors, Inc., Frank Geiser, and Mary Geiser, alleging that defendants breached an indemnity agreement between the parties. Plaintiff sought damages for defendants' alleged failure to repay certain expenses incurred by plaintiff and specific performance of defendants' obligation to provide plaintiff with collateral. Plaintiff now moves for summary judgment. For the reasons explained below, the motion is granted in full.

## BACKGROUND

The following facts are taken from the parties' Rule 56.1 statements and relevant portions of the record and are undisputed unless otherwise noted.

### I.   The Indemnity Agreement

Defendant Biltmore General Contractors, Inc., is a general contractor specializing in public works projects for the City and State of New York. *See* Decl. of Frank Geiser ¶ 4 ("Geiser Decl.") (Dkt. #26-3). Plaintiff Liberty Mutual Insurance Company issued surety bonds on Biltmore's behalf to help finance these construction projects. *See id.* ¶ 2; Pl.'s Rule 56.1 Statement ¶¶ 1–2 ("Pl.'s Statement") (Dkt. #25-1); Defs.' Rule 56.1 Statement ¶¶ 1–2 ("Defs.' Statement")

(Dkt. #26-1).  As a condition of plaintiff's issuance of these bonds, in 2010 the parties entered into an indemnity agreement under which defendants—Biltmore, Frank Geiser, and Mary Geiser—agreed to indemnify plaintiff for certain expenses relating to the bonds.  *See* Pl.'s Statement ¶ 1; Defs.' Statement ¶ 1; Decl. of Michael F. Burkhardt ("Burkhardt Decl."), Ex. 1 ("Indemnity Agreement") (Dkt. #25-3).  The parties agree that the Indemnity Agreement is governed by New York law.[1]

Paragraph SECOND of the Indemnity Agreement is most relevant here.  That paragraph provides that "the Indemnitors"—*i.e.*, defendants—"shall exonerate, hold harmless, indemnify, and keep indemnified the Surety"—*i.e.*, plaintiff—"from and against any and all liability for losses, fees, costs and expenses of whatsoever kind or nature including . . . court costs, counsel fees, accounting, engineering and any other outside consulting fees and from and against any and all such losses, fees, costs and expenses which the Surety may sustain or incur," if those losses or expenses are incurred in one of four ways:

(1) by reason of being requested to execute or procure the execution of any Bond; or

(2) by having executed or procured the execution of any Bond; or

(3) by reason of the failure of the Indemnitors or Principals to perform or comply with any of the covenants and conditions of this Agreement or other Agreements; or

(4) in enforcing any of the covenants and conditions of this Agreement or Other Agreements.

Indemnity Agreement, ¶ SECOND ("Indemnity Clause").

The same paragraph goes on to provide a mechanism by which plaintiff can require defendants to provide collateral in anticipation of *future* expenses: "If [plaintiff] determines, in its

---

[1] More specifically, plaintiff asserts that New York law governs the interpretation of the contract here, *see* Pl.'s Mot. for Summary Judgment 12–13 ("Pl.'s Mot.") (Dkt. #25), and defendants do not argue otherwise.  *See generally* Defs.' Opp'n to Pl.'s Mot. for Summary Judgment ("Defs.' Opp'n") (Dkt. #26).

sole judgment, that potential liability exists" for the types of losses, fees, costs, and expenses just discussed, then defendants "shall deposit with [plaintiff], promptly upon demand, a sum of money equal to an amount determined by [plaintiff] or collateral security of a type and value satisfactory to the Surety, to cover that liability." *Ibid.* ("Collateral Clause").  Plaintiff has "the right to use any [such] collateral, or any part thereof, in payment or settlement of any such liabilities" ultimately incurred. *Ibid.*

Paragraph SECOND further provides that plaintiff may charge defendants for "any and all disbursements made by it in good faith . . . under the belief that it is, or was, or might be liable for the sums and amounts so disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed" in fact. *Ibid.* ("Good Faith Clause").  In determining defendants' liability to plaintiff under this provision, the agreement provides that "vouchers or other evidence of any such payments made by [plaintiff] shall be prima facie evidence of the fact and amount of the liability to [plaintiff]." *Ibid.* ("Evidence Clause").

Elsewhere, the Indemnity Agreement grants plaintiff "the right, at its option and sole discretion, to adjust, settle, or compromise any claim, demand, suit or judgment upon any Bond, unless [defendants], providing a reasonable legal basis therefor, shall request [plaintiff] to litigate such claim or demand . . . and shall deposit with [plaintiff], at the time of such request, cash or collateral satisfactory to [plaintiff]" to cover any resulting judgment. *Id.* ¶ THIRTEENTH ("Settlement Clause").

## II.   The Instant Litigation

In the years since the parties executed the Indemnity Agreement, defendants' suppliers and subcontractors have filed over fifty lawsuits relating to defendants' construction projects. *See* Pl.'s Statement ¶ 3; Defs.' Statement ¶ 3 (disputing the value, but not the number or the substance, of

3

these claims).  Plaintiff, as the surety on the underlying bonds, is named as a defendant in nine of

those actions.  *See* Pl.'s Statement ¶ 4; Defs.' Statement ¶ 4.  According to plaintiff, the plaintiffs

in those suits seek to recover upwards of $2,142,736.53.  *See* Pl.'s Statement ¶¶ 4, 12.  Defendants

do not dispute that figure represents the face value of the claims but contend that "[t]he exposure

of the underlying claims in question are grossly misstated and do not consider [defendants']

defenses, damages, and counterclaims."  Defs.' Statement ¶ 12.

In response to this flood of litigation, plaintiff "retained outside counsel, outside engineers,

and outside accountants to assist in [its] independent investigation, defense, and/or resolution of

the various claims and civil actions" filed.  Pl.'s Statement ¶ 5.  According to a declaration

submitted by Michael F. Burkhardt, plaintiff's Senior Surety Claims Counsel, as a result of these

efforts plaintiff incurred $665,084.84 in expenses—$266,947.13 in attorneys' fees, $8,654.20 in

accountants' fees, $7,192.75 in engineering fees, $895.80 in travel expenses, and $381,394.96 to

settle claims in two lawsuits.  *See* Burkhardt Decl. ¶ 4; Pl.'s Statement ¶¶ 6–9.  Plaintiff asserts

that "every payment that [it] has made by reason of having issued the Bonds was made under the

honest belief that [it] was or might be liable for the payment or that the payment was necessary or

expedient under the circumstances."  Pl.'s Statement ¶ 10.  Defendants, on the other hand, assert

that plaintiff "needlessly" incurred expenses because Biltmore "had already retained counsel to

defend it in these actions and to pursue an expedient resolution of these matters."  Defs.' Statement

¶ 5.  As a result, defendants contend, plaintiff's expenditures were "excessive."  *Id.* ¶¶ 6, 7, 9.

In August 2021, invoking its rights under the Indemnity and Collateral Clauses of the

contract, plaintiff sent defendants a letter demanding (1) reimbursement of $572,745.05 in

expenses incurred in connection with the litigation just discussed (an amount which has since

grown to the $665,084.84 figure set out above); and (2) a transfer of $2,000,000 in collateral

against the potential liability of $2,142,736.53 arising from the nine lawsuits in which plaintiff is a named party.  Pl.'s Statement ¶¶ 14–15.  Defendants refused those requests, *see id.* ¶¶ 16–17, and this lawsuit followed.  Plaintiff now moves for summary judgment.

## STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a factual dispute is material if it "might affect the outcome of the suit under the governing law."  *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020) (quoting *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  In determining whether there is a genuine issue of material fact, a court evaluates the whole record, resolving all ambiguities and drawing all permissible factual inferences in favor of the nonmovant.  *See ibid.*  A nonmoving party can survive summary judgment only if there is sufficient evidence to permit a rational trier of fact to find in that party's favor.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

In assessing the record, I consider cited "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, [and] interrogatory answers."  Fed. R. Civ. P. 56(c)(1)(A).  I view "the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor."  *Tracy v. Freshwater*, 623 F.3d 90, 95 (2d Cir. 2010).  "[I]n a contract dispute," moreover, "summary judgment may be granted only where the language of the contract is unambiguous."  *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996).  And just as with contracts in general, "an indemnity contract is interpreted to effectuate the intention of the parties as expressed in the unequivocal language of

5

the contract." *Goodman v. Port Auth. of N.Y. & N.J.*, 850 F. Supp. 2d 363, 389 (S.D.N.Y. 2012) (quoting *Gibbs-Alfano v. Burton*, 281 F.3d 12, 19 (2d Cir. 2002)).

## DISCUSSION

Plaintiff's motion is granted in full. Defendants have failed to raise a genuine dispute of material fact as to plaintiff's entitlement under the Indemnity Agreement to the reimbursement and collateral it has requested.

### I. The Indemnity Agreement Entitles Plaintiff to Reimbursement of $665,084.84 in Expenses.

Plaintiff is entitled to summary judgment on its claim for reimbursement of $665,084.84 in expenses incurred while investigating and litigating state-court suits relating to bonds it issued on defendants' behalf.

Defendants do not dispute that the legal, accounting, engineering, and travel expenses plaintiff incurred are expenses of the type contemplated by the agreement's Indemnity Clause. *See* Indemnity Agreement, ¶ SECOND; Pl.'s Mot. 15 (asserting that these expenses were incurred "by having executed or procured the execution of any Bond" or "in enforcing any of the covenants and conditions of this Agreement" within the meaning of Paragraph SECOND); *see generally* Defs.' Opp'n (not disputing this point). Instead, the parties' dispute focuses on the narrower question whether plaintiff's request for reimbursement of those expenses complied with the contract's Good Faith and Evidence Clauses. *See* Indemnity Agreement, ¶ SECOND. Specifically, defendants argue that plaintiff acted unreasonably and in bad faith in accruing the $665,084.84 in expenses, and that in any event plaintiff has not submitted sufficient proof of those expenses to trigger its right to reimbursement. Both arguments fail.

**A. Defendants Have Not Identified a Dispute of Material Fact as to Plaintiff's Good Faith or the Reasonableness of Plaintiff's Expenditures.**

The Indemnity Agreement's Good Faith Clause entitles plaintiff to reimbursement for "any and all disbursements made by it in good faith . . . under the belief that it is, or was, or might be liable for the sums and amounts so disbursed or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed" in fact. *Ibid.* New York courts have interpreted similar provisions as entitling a surety "to indemnification upon proof of payment, unless payment was made in bad faith or was unreasonable in amount." *Frontier Ins. Co. v. Renewal Arts Contracting Corp.*, 784 N.Y.S.2d 698, 700 (App. Div. 2004); *see First Nat'l Ins. Co. v. Joseph R. Wunderlich, Inc.*, 144 F. App'x 125, 127 (2d Cir. 2005) (explaining that the effect of such a clause is to "preclude[] litigation over questions of whether the [surety was] 'actually liable for the payments claimed'" (quoting *Gen. Accident Ins. v. Merritt-Meridian Const. Corp.*, 975 F. Supp. 511, 516 (S.D.N.Y. 1997) (applying New York law))).  And "New York courts have equated 'bad faith' with 'fraud or collusion.'" *Travelers Indem. Co. v. Harrison Constr. Grp. Corp.*, No. 06-CV-4011 (FB) (RML), 2008 WL 4725970, at *5 (E.D.N.Y. Oct. 22, 2008) (quoting *Peerless Ins. Co. v. Talia Const. Co.*, 708 N.Y.S.2d 223, 224 (App. Div. 2000)); *see Gen. Accident Ins.*, 975 F. Supp. at 516 (equating "good faith" with "the absence of an indication of fraud or collusion between [the surety] and the [third-party] claimants").

Moreover, under such provisions, a surety's expenditure of funds on matters related to the underlying bonds is entitled to a "presumption of propriety," *Frontier Ins. Co.*, 784 N.Y.S.2d at 700, such that on a surety's summary judgment motion it is the indemnitors' burden to produce evidence showing "bad faith or unreasonableness of the amount paid." *Travelers*, 2008 WL 4725970, at *4.  As a result, "[c]onclusory allegations of bad faith are insufficient to defeat a motion for summary judgment in favor of a surety seeking to enforce an indemnification

7

agreement." *Gen. Accident Ins.*, 975 F. Supp. at 518; *see Frontier Ins. Co.*, 784 N.Y.S.2d at 700 ("[D]efendants' conclusory allegations of possible collusion . . . are insufficient to meet defendants' burden to raise a question of material fact as to bad faith.").

Defendants have not put forward evidence from which a jury could find that plaintiff acted in bad faith or incurred unreasonable expenses.   They have not alleged anything even approximating fraud or collusion; the entirety of their argument on bad faith is: "[Plaintiff] is required to act in good faith in accruing expenses on behalf of [d]efendants, which it has failed to do."  Defs.' Opp'n 5.  Those "[c]onclusory allegations of bad faith are insufficient" to defeat plaintiff's summary judgment motion.  *Gen. Accident Ins.*, 975 F. Supp. at 518.  As for the reasonableness of plaintiff's expenditures, defendants contend that plaintiff's retention of lawyers and accountants to investigate the various claims involving the underlying bonds was "excessive and wholly unnecessary" because defendants had already retained their own lawyers.  Defs.' Opp'n 2–3.  But the Indemnity Clause expressly contemplates that plaintiff would be indemnified for "counsel fees, accounting, engineering and any other outside consulting fees"—without any limitation to cases in which defendants had not themselves retained counsel.   Indemnity Agreement, ¶ SECOND.  And defendants have not put forward any evidence from which a factfinder could conclude that the amounts plaintiff expended on these services was unreasonable. Accordingly, defendants have not identified a triable question of fact as to the reasonableness of plaintiff's expenditures.

### B.  Plaintiff Has Submitted Sufficient Evidence of Its Expenditures to Entitle It to Judgment.

That leaves defendants' claim that plaintiff has not submitted sufficient "proof of payment" to trigger its contractual right to indemnification.  *Frontier Ins. Co.*, 784 N.Y.S.2d at 700.  The contract's Evidence Clause provides that "vouchers or other evidence of any . . . payments made

by [plaintiff] shall be prima facie evidence of the fact and amount of the liability to [plaintiff]." *Id.* ¶ SECOND.  Relying on this language, defendants say that because plaintiff has not submitted any "vouchers, cancelled checks, credit statements, invoices, wire transfers, [or] accounts payable" corroborating the $665,084.84 amount it seeks in reimbursement—and instead relies only on the declaration of its Senior Surety Claims Counsel Michael F. Burkhardt—there is insufficient proof of plaintiff's expenditures to warrant summary judgment in its favor.  Defs.' Opp'n 3.

Defendants' argument is unavailing.  The Evidence Clause permits plaintiff to prove its expenses by "vouchers *or other evidence*," Indemnity Agreement, ¶ SECOND (emphasis added), and the Burkhardt Declaration qualifies as evidence.  *See, e.g. Reid v. Telentos Constr. Corp.,* No. 15-CV-2358 (SJB), 2020 WL 6152494, at *7 (E.D.N.Y. Oct. 20, 2020) (determining, at summary judgment, that an affidavit of the surety's president stating the amounts paid was "sufficient 'other evidence' to make out a *prima facie* right to reimbursement"); *John Deere Ins. Co. v. GBE/Alasia Corp.*, 869 N.Y.S.2d 198, 200 (App. Div. 2008) (same).  Defendant has come forward with no evidence to contradict the amounts plaintiff seeks.  Plaintiff is therefore entitled to summary judgment on its claim for indemnification of $665,084.84.

## II.    Plaintiff's Request for $2,000,000 in Collateral Is Reasonable

Plaintiff is entitled to summary judgment on its claim for specific performance of defendants' obligation to provide $2,000,000 in collateral.

Here again the parties start on a good deal of common ground.  Defendants do not dispute that, under the Indemnity Agreement, plaintiff may require defendants to provide it with collateral "under certain circumstances."  Defs.' Opp'n 4.  Nor do defendants argue that the circumstances here—where plaintiff has requested collateral in anticipation of possible liability from the nine lawsuits in which it is named as a party—do not qualify.  *See id.* at 4–5.  Finally, defendants do

not argue that specific performance is an inappropriate remedy for any failure to comply with the contract's Collateral Clause.  *See ibid.*  Instead, defendants invoke the principle that "a collateral security clause is enforceable as long as the amount demanded by a surety is reasonable," *U.S. Fid. & Guar. Co. v. J. United Elec. Contracting Corp.*, 62 F. Supp. 2d 915, 922 (E.D.N.Y. 1999), to argue that it would be "wholly unreasonable" for defendants to "be required to post collateral approximating the same amount demanded in the underlying actions, which said amounts are inaccurate, inflated, and do not consider [d]efendants' counterclaims," Defs.' Opp'n 4. Accordingly, defendants say, because plaintiff has requested $2,000,000 in collateral against a potential liability of just $2,142,736.53, its request is unreasonable and unenforceable.  *Id.* at 5.

That argument is unavailing.  "Courts applying New York law have stated that as a general matter, '[a] demand for collateral is reasonable if the sum demanded is commensurate with the claims made against the surety or the amount sought by a third party in litigation.'"  *RLI Ins. Co. v. Pro-Metal Constr. Inc.*, No. 18-CV-2762 (AJN), 2019 WL 1368851, at *4 (S.D.N.Y. Mar. 26, 2019) (alteration in original) (quoting *Star Ins. Co. v. Champion Constr. Servs. Corp.*, No. 13-CV-3635 (ARR) (RML), 2014 WL 4065093, at *4 (E.D.N.Y. July 29, 2014) (collecting New York cases), *report and recommendation adopted*, 2014 WL 4065094 (E.D.N.Y. Aug. 15, 2014)).  As a consequence, New York courts routinely award specific performance at the summary judgment stage when the surety requests collateral in an amount less than the face value of the underlying claims.  *See, e.g.*, *Utica Mut. Ins. Co. v. Cardet Const. Co.*, 981 N.Y.S. 2d 118, 120 (App. Div. 2014) (approving request for $251,688.80 in collateral against potential liability of over $1 million); *Centennial Ins. Co. v. 4-A Gen. Contracting Corp.*, 831 N.Y.S.2d 346 (Sup. Ct. 2006) (approving request for $1,726,000.00 in collateral against potential liability of over $7 million). That result holds as a general matter even where the amount requested approaches or even equals

the face value of those claims.  *See RLI Ins. Co.*, 2019 WL 1368851, at *4 (approving request for $3,953,273.03 in collateral—the face value of the underlying claims—and observing that such a request, "[o]n its face," is "commensurate with" . . . the amount sought by a third party in litigation" because "commensurate" means "equal in measure or extent" (citations omitted)).

Defendants seek to circumvent these precedents by arguing in general terms that the claims in the nine lawsuits naming plaintiff as a party "are overinflated and do not include [counter]claims filed or to be filed by [defendants]."  Defs.' Opp'n 5.  But the Indemnity Agreement's Collateral Clause gives plaintiff sole authority to "determine[] . . . that potential liability exists" and to demand collateral "of a type and value satisfactory to [it], to cover that liability," Indemnity Agreement, ¶ SECOND, "subject only to the general reasonableness requirement" under New York law, *RLI Ins. Co.*, 2019 WL 1368851, at *4.  And while "[t]here may be cases in which recovery of the amount demanded is, on the face of the record, virtually impossible," such that a request for collateral commensurate with the amount demanded is in fact unreasonable, *id.* at *5, defendants have pointed to no evidence in the record to support their assertions that the claims in the nine state-court cases here are in fact "overinflated," Defs.' Opp'n 5.  Without such evidence, the Court cannot identify any issue of material fact as to the reasonableness of plaintiff's request for collateral.  *See RLI Ins. Co.*, 2019 WL 1368851, at *5.

Plaintiff is accordingly entitled to summary judgment on its claim for specific performance of defendants' contractual duty to deposit collateral in the amount of $2,000,000 with plaintiff.

**CONCLUSION**

Plaintiff's motion for summary judgment and injunctive relief is granted.  The Clerk of Court is respectfully directed to enter judgment in plaintiff's favor in the amount of $665,084.84 and enjoin defendants to deposit $2,000,000 in collateral with the plaintiff.  SO ORDERED.

_/s/ Rachel Kovner_
RACHEL P. KOVNER
United States District Judge

Dated: August 21, 2023
        Brooklyn, New York